# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

———————————————————————— :
RASHEED AMIN,                    :
                                 :     Civ. No. 11-3312 (JBS)
                 Petitioner,     :
                                 :
       v.                        :     **OPINION**
                                 :
EVELYN DAVIS, Warden, et al.,    :
                                 :
                 Respondents.    :
———————————————————————— :

**APPEARANCES:**

　　　　RASHEED AMIN
　　　　312237C/606757
　　　　Bayside State Prison
　　　　P.O. Box F-1
　　　　Leesburg, NJ 08327
　　　　　　　Petitioner *pro se*

　　　　J. VINCENT MOLITOR
　　　　Cape May County Prosecutor
　　　　4 Moore Road
　　　　DN-110 Central Mail Room
　　　　Cape May Court House, NJ 08210
　　　　　　　Respondents

**<u>SIMANDLE, Chief Judge</u>:**

## I.    INTRODUCTION

Petitioner is a state prisoner and is proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted by a jury of various distributing and conspiracy to distribute controlled dangerous substances offenses. He is currently serving a sentence of twenty years imprisonment with a ten-year parole disqualifier. Petitioner raises six claims in this habeas petition; specifically:

1. Due process violation when the trial court permitted a detective to testify that she obtained a photograph of petitioner from the Department of Corrections;

2. Due process violation when the trial court failed to charge the jury with a limiting instruction concerning the testimony that petitioner's photograph was obtained from the Department of Corrections;

3. Due process violation when the trial court failed to grant a mistrial when it improperly permitted expert testimony;

4. Due process violation when the trial court failed to suppress wiretap recordings;

5. Due process violation when the trial court failed to grant petitioner a mistrial due to the prosecutor's improper remarks during summation; and

6. Due process violation when the trial court failed to adequately respond to the jury's request for written jury instructions.

For the following reasons, the habeas petition will be denied.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

On March 30, 2006, Detective Katherine Curtin of the Cape May County Prosecutor's Office [FN 1] began an undercover investigation regarding Steven Hawk, a/k/a defendant Rasheed Amin. On that date, she obtained a photograph of defendant from the Department of Corrections (DOC) that she used to identify defendant and made the first of four hand-to-hand purchases of cocaine directly from him.

[FN 1] In March 2006, Curtin was a "grant employee"; she was hired as a full-time employee in June 2006 and given the title of detective at that time.

At the time of the first purchase, Curtin paid defendant $50 for .304 grams of cocaine. Defendant gave her his telephone number to use to contact him for additional purchases.

---

[1] The factual background is taken from the Superior Court of New Jersey, Appellate Division opinion on petitioner's direct appeal that was decided on July 9, 2010. (*See* Dkt. No. 12-7.)

Using that telephone number, Curtin arranged a second purchase of cocaine from defendant for $100 on April 7, 2006. They met in a motel parking lot. A second motor vehicle pulled up; defendant went to that motor vehicle and returned to Curtin's vehicle, where he provided her with .732 grams of cocaine.

The third purchase occurred on April 19, 2006, at a shopping center parking lot. Curtin testified that defendant advised her that they had to wait for "his girl, [that] she was going to be bringing the stuff over, the stuff being the drugs, the cocaine." A motor vehicle arrived and co-defendant Keisha Jones exited and handed defendant a clear plastic bag containing 1.761 grams of cocaine. Curtin paid defendant $100 for the cocaine.

Curtin contacted defendant to arrange the fourth hand-to-hand transaction on April 26, 2006. Curtin testified that she requested $250 worth, or a quarter-ounce of cocaine, and gave him the money.

Defendant told her that he was going to take her "to his boys to get a heavier bag" and drove them to a drug store in North Cape May. A red Ford Taurus with two unidentified males pulled up. Defendant walked to the passenger side of the vehicle, stayed there briefly, and returned to Curtin with the cocaine.

When Curtin contacted defendant to arrange for a fifth purchase, he replied that he was in North Carolina but that he could set it up and "Angel" would be able to supply her. Defendant later called her, advised that he had spoken to Angel, and told her where to meet him. [FN 2] On May 5, 2006, Angel arrived at the designated meeting place, left his vehicle, approached Curtin's vehicle and entered. She asked if he was Angel; he answered affirmatively, and they discussed the drug purchase. Curtin gave him $100 and he gave her 1.97 grams of cocaine.

[FN 2] Angel was later identified as co-defendant Randy L. Lewin.

Curtin called defendant on May 11, 2006 to arrange a sixth purchase. In a tape-recorded conversation, she asked him to contact Angel because he was not returning her calls. Defendant agreed to do so. After contacting Angel at a telephone number given to her by defendant, they met at a K-mart parking lot. A red Taurus pulled in to the parking lot with two males, one of whom was Angel. Curtin walked to the passenger side of his vehicle, where she purchased an additional quantity of cocaine for $100.

When Curtin was unsuccessful in attempting to contact Angel for another purchase, she again called defendant in North Carolina on May 19, 2006. In this tape-recorded conversation, Curtin negotiated for the purchase of an eight-ball, or one-eighth ounce of cocaine. Angel later called her and told her to call when she was ready to meet with him. They arranged to meet at a shopping mall parking lot, where Curtin purchased 3.193 grams of cocaine for $150.

Defendant was indicted [FN3] on seven counts of third-degree distribution of less than one-half ounce of cocaine, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3) (counts one, two, three, five, six, eight, ten); four counts of second-degree distribution of cocaine in a quantity of one-half ounce or more, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35(b)(2) (count twelve); and with being the leader of a narcotics trafficking network, N.J.S.A. 2C:35-3 (count thirteen) (the kingpin count).

[FN 3] Co-defendant Keisha Jones was indicted for distribution of cocaine (count three) and conspiracy to distribute cocaine (count four). Randy Lewin was indicted on two counts of distribution (counts six and eight) and two counts of conspiracy to distribute cocaine (counts seven and nine). Co-defendants Lonny R. Adams, Ray Rogers, Jaimi L. Hess and Pamela A. Randazzo were each indicted on two counts of possession of cocaine, N.J.S.A. 2C:35-10(a)(1) (counts fourteen and fifteen).

Defendant moved for the suppression of his tape-recorded conversations with Curtin on the grounds that Curtin was not an "investigator or law enforcement officer" as defined in N.J.S.A. 2A:156A-2(f); that as a result, the State was required and failed to obtain the prior written approval of the Attorney General, the county prosecutor, or their designee, for recording the conversation pursuant to N.J.S.A. 2A:156A-4(c). Defendant also moved for the dismissal of the kingpin count and for the suppression of statements made by co-defendant co-conspirators pursuant to *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). The trial court denied the motions.

There was also a pretrial discussion concerning the photograph Curtin obtained from the DOC and used to identify defendant. The prosecutor acknowledged that certain information on the photograph was prejudicial to defendant and should be redacted. Defense counsel requested further that the photograph should be excluded from evidence. The prosecutor maintained that the

photograph was necessary to the State's proof of identification. Defense counsel argued that it was unnecessary because "[w]e have all these other transactions. She's going to identify him in all other transactions. It's not an ID case." The court ruled that the state would be permitted to use a redacted photograph, provided there was no reference or description of the source of the photograph.

Defendant was acquitted on the kingpin count and convicted on counts one through twelve.

(Dkt. No. 12-7 at p. 2-6.)

Petitioner appealed his conviction to the Superior Court of New Jersey, Appellate Division. The Appellate Division affirmed on July 9, 2010. (*See id.*) Petitioner then filed a petition for certification to the New Jersey Supreme Court. On November 4, 2010, the New Jersey Supreme Court summarily denied the petition for writ of certification. (*See* Dkt. No. 12-8.)

On June 8, 2011, petitioner filed the instant federal habeas petition. Respondent has filed an answer in opposition to the petition.

## III.    APPLICATION LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws or treaties of the United States. *See Engle v. Isaac*, 456 U.S. 107, 119 (1982); *see also Mason v. Myers*, 208 F.3d 414, 415 n.1 (3d Cir. 2000) (citing 28 U.S.C. § 2254). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214 (Apr. 24, 1996), applies. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d).

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle set forth by the Supreme Court at the time the state court renders its decision." *Id.* (citations omitted). A federal habeas court making an unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *See Williams v. Taylor*, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue a writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

The AEDPA standard under § 2254(d) is a "difficult" test to meet and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, - U.S. -, 131 S. Ct. 1388, 1398 (2011). The petitioner carries the burden of proof and with respect to review under § 2254(d)(1), that review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.*

In applying AEDPA's standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008). Furthermore, "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting

the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

Additionally, AEDPA deference is not excused when state courts issue summary rulings on

claims as "[w]hen a federal claim has been presented to a state court and the state court has

denied relief, it may be presumed that the state court adjudicated the claim on the merits in the

absence of any indication or state-law procedural principles to the contrary." *Harrington v.*

*Richter*, - U.S. -, 131 S. Ct. 770, 784-85 (2011) (citing *Harris v. Reed*, 489 U.S. 255, 265

(1989)).

## IV.    DISCUSSION

A. Claim I – Department of Corrections Photograph

In Claim I, petitioner argues that his due process rights were violated when the trial court

permitted Curtin to testify that she obtained a photograph of petitioner from the Department of

Corrections.  Petitioner contends that this testimony "sent a clear message to the jury that [he]

was [a] convicted felon."  (Dkt. No. 1 at p. 12.)  The last reasoned state court decision on this

Claim was from the Appellate Division which analyzed this Claim as follows:

> We turn first to the evidence relating to a photograph of defendant
> obtained from the DOC.  As defense counsel correctly pointed out,
> identification was not a critical issue in a case involving multiple
> hand-to-hand transactions with an undercover officer and tape-
> recorded conversations.  Prior to trial, the trial court correctly set
> parameters for the State's use of the photograph, i.e., that there be
> no reference to the source of the redacted photograph.  Despite this
> explicit instruction, Curtin mentioned twice that she obtained the
> photograph from "Corrections."  Defendant argues that the trial
> court erred in permitting such testimony, in denying a motion to
> strike the testimony and in failing to give the jury a limiting
> instruction regarding this testimony.
>
> It is a mischaracterization to argue that the trial court "permitted"
> such testimony because the trial court unequivocally prohibited the
> State from making any reference to the origin of the photograph
> and, in fact, no references were elicited during the direct

examination of any prosecution witness.  The first reference came during a vigorous cross-examination of Curtin:

> Q:  Now again on March 30, 2006[,] when you
> began this investigation there's no photos, there's
> no tapes, there's no fingerprints on any drugs,
> there's no taping of any sort, correct?
> A:  I actually obtained a photograph from the
> correction center and saw Hawk prior to the deal.

Defense counsel did not immediately object to this testimony but instead, directed his follow-up questions to clarify there were no photographs of any offense.  The first objections came after a recess.  Defense counsel stated that while he had chosen not to make an objection and get into that at that point," he now moved to strike that testimony and asked the court to instruct the jury "in reference to where photos come from and how they get photos."  Defense counsel also faulted the witness, stating, "and she knows not to say Department of Corrections but she said Department of Corrections."  The trial judge denied the motion to strike and noted that, as he had earlier indicated to counsel, he would give that charge at the trial's conclusion, [FN 4] which in fact he did.

[FN 4]  The court gave the following charge:
I charge you now on photographs.  There has been referenced in this record and indeed introduced into evidence a photograph of the defendant.  With reference to that photograph which was produced by a witness on behalf of the State you may determine that the photograph appears to have been taken by a law enforcement agency or some other governmental entity.  You are not to consider the fact that any governmental agency that may have obtained such a photograph of the defendant as prejudicing the defendant in any way.  The photograph is not evidence that this defendant has ever been arrested or convicted of any crime.  Such photographs, as here entered [in] this record, come into the hands of law enforcement and other governmental entities, agencies, departments for a variety of reasons, including but not limited to driver's license applications, passports, ABC or Alcohol Beverage Control identification cards, now county identification cards, various forms of government employment, private employment requiring state regulation including but not limited to casino license applications, security guard applications, et cetera, or from a variety of other sources totally unconnected with criminal activity.  So again, the fact and the nature of the photograph of the defendant is not to be considered by you as prejudicing the defendant to any extent, you should draw no negative inferences

from the photograph or your perception of the type of photograph that it is or may be. *See Model Jury Charge (Criminal)*, "Identity-Police Photos" (1992).

Defense counsel pressed further:

> [COUNSEL]: Again, why did the witness have to say Department of Corrections? She could have said I had a photo.
> COURT: She was asked under oath a blanket question that as of March 30, 2006 you had no photos, tapes or fingerprints. She answered obviously that she had a DOC photo. You opened the door, Counsel.

At best, Curtin's reference to "Corrections" was the gaffe of an inexperienced witness; at worst, it was a calculated measure to take advantage of a sweeping question by gratuitously injecting negative information about defendant in response. In either case, it would have been prudent for the court to address Curtin directly to confirm that she was aware of the court's prior order and understood her obligation to comply with that order. If that had been done, even without the request of counsel, it is less likely that Curtain would have made a second reference to "the Corrections photograph:"

> Q: Do you, do you know what Mr. Hawk's real name is?
> A: Steven Harrell Hawk, sir.
> Q: Steven Harrell Hawk?
> A: He goes also by Rasheed Amin.
> Q: Well, Rash[ee]d Amin, is that his real name?
> A: I know him as Steven Harrell Hawk. That is how I positively identified him off a corrections photograph.

Defense counsel did not object to this reference.

The references to "Corrections" were improper because they "carr[y] the connotation that defendant was involved in prior criminal conduct." *State v. Miller*, 159 N.J. Super. 552, 562 (App. Div.), *certif. denied*, 78 N.J. 329 (1978). Defense counsel's objection provided the court with an opportunity to address the issue by striking the testimony or giving a curative instruction while the witness was still on the stand. The court erred in failing to do either.

However, references to a photograph as a "mug shot" or otherwise obtained from police sources have been found to be harmless error where the reference is solitary and fleeting and accompanied by an appropriate charge to the jury. *See, e.g.*, *Miller*, *supra*, 159 N.J. Super. at 562. *See also State v. Harris*, 156 N.J. 122, 173 (1998); *State v. Mays*, 321 N.J. Super. 619, 632 (App. Div.) (reference to Rahway State Prison harmless), *certif. denied*, 162 N.J. 132 (1999); *State v. Porambo*, 226 N.J. Super. 416, 426 (App. Div. 1988). The error may be harmless even when the evidence is not just a fleeting reference in testimony but rather, the actual admission of a photograph of defendant in prison garb into evidence. *Compare State v. Burton*, 309 N.J. Super. 280, 289 (App. Div.) (admission of photograph of defendant in prison garb as part of photographic array used to identify defendant harmless error in light of "overwhelming evidence of guilt."), *certif. denied*, 156 N.J. 407 (1998), *with State v. Taplin*, 230 N.J. Super. 95, 98-100 (App. Div. 1988) (where identification was not an issue, admission of "mug shot" of defendant required reversal of conviction).

In reviewing the relevant circumstances here, we note that there were two references, rather than a solitary reference to "Corrections" as the source of the photograph Curtin used to identify defendant. These references were, however, still fleeting. *See Porambo*, *supra*, 226 N.J. Super. at 426 (harmless error found despite more than one reference that could be construed as reference to defendant's prior involvement in criminal history). Although the court failed to give an immediate curative instruction, the appropriate instruction was included in the charge to the jury. We have scrutinized these errors more closely because identification was not an issue here. However, we are satisfied that, because the evidence of defendant's guilt of the crimes for which he was convicted was overwhelming, any error here in failing to strike the testimony or give a curative instruction when requested was harmless. R. 2:10-2.

(Dkt. No. 12-7 at p. 8-14.)

Claim I is not cognizable on federal habeas review to the extent petitioner asserts that the state court erred as a matter of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (stating that "it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions"). The due process inquiry that is applicable to Claim I is

whether the state court's ruling was so arbitrary or prejudicial that it rendered the trial fundamentally unfair.  *See Romano v. Oklahoma*, 512 U.S. 1, 12-13 (1994); *see also Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001) (noting that to show that an evidentiary error rises to the level of a due process violation, a petitioner must show "that it was of such magnitude as to undermine the fundamental fairness of the entire trial").  The United States Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly."  *Dowling v. United States*, 493 U.S. 342, 352 (1990).

Additionally, even if an evidentiary ruling amounts to a Constitutional violation, a federal habeas court applies the harmless error test.  *See Kontakis v. Beyer*, 19 F.3d 110, 120 (3d Cir. 1994).  Under the applicable harmless error test, a habeas petitioner must demonstrate constitutional error that resulted in "actual prejudice" in order to obtain relief from a federal court; which asks whether the error had a "substantial and injurious effect or influence in determining the jury's verdict."  *Eley v. Erickson*, 712 F.3d 837 (3d Cir. 2013) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).  Indeed, the Supreme Court has stated that "in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*, *supra*, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman* [*v. California*], 386 U.S. 18 [1967]."  *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007); *see also Bond v. Beard*, 539 F.3d 256, 275-76 (3d Cir. 2008) ("*Fry* instructs us to perform our own harmless error analysis under *Brecht* . . . rather than review the state court's harmless error analysis under the AEDPA standard.")  In reviewing the record, if a federal habeas court is in "grave doubt" as to whether the error had a substantial and injurious effect or influence in determining the jury's verdict, then

the error was not harmless. *See Adamson v. Cathel*, 633 F.3d 248, 260 (3d Cir. 2011) (citing *O'Neal v. McAninch*, 513 U.S. 432, 438 (1995)).

As the state court noted, the trial court gave a limiting instruction to the jury on the use of the photos. The jury is presumed to have followed this instruction. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Moreover, the first mention of the corrections photograph was in response to a series of questions by defense counsel on cross-examination that implied Curtin had no photo of defendant, and thus did not have a positive identification in her investigation, as to which the defendant, not the prosecution, opened the door to her correct response about the photo. Similarly, Curtin's second mention was in reply to cross-examination that attempted to challenge the witness's knowledge of defendant's name and identity, as to which the witness properly replied that she was satisfied that she knew his name from the positive identifiers in the corrections photo. Each response was pertinent and probative to meeting the issue of defendant's identity and name as raised by the defense.

Additionally, the case against petitioner was strong as Curtin's testimony and recordings directly implicated petitioner in the multiple instances of the crimes for which he was convicted as stated in *supra* Part II. Any purported error rising to a constitutional violation was harmless under these circumstances. *Accord Peace v. Hendricks*, No. 03-5987, 2005 WL 3406405, at *6-7 (D.N.J. Dec. 12, 2005) (finding harmless error when state court improperly admitted photographs of petitioner which stated "Sheriff's Department Camden County New Jersey Correctional Facility" where there was overwhelming evidence of petitioner's guilt and the state court issued a limiting instruction to the jury concerning the manner in which the photo could be used). Therefore, Claim I will be denied.

B. Claim II – Department of Corrections Photograph Jury Instructions

In Claim II, petitioner contends that his due process rights were violated because the trial court failed to issue a curative instruction immediately after Curtin mentioned the Department of Corrections photo. He also claims that the curative instruction that the trial court gave during closing argument was insufficient as it did not mention the Department of Corrections.

This Claim is related to Claim I. The Appellate Division determined that any potential prejudice towards petitioner regarding Curtin's testimony concerning the Department of Corrections photograph was harmless as the trial court gave an appropriate limiting instruction to the jury and the case against petitioner was strong. As explained *supra*, any Constitutional error by permitting Curtin to mention the Department of Corrections photograph was harmless.

Furthermore, petitioner's argument that the limiting instruction was insufficient because it did not mention the "Department of Corrections" lacks merit. "Habeas relief for a due process violation concerning an absent or defective instruction is available when the absence of an instruction, or a defective instruction, infects the entire trial with unfairness." *See Albrecht v. Horn*, 485 F.3d 103, 129 (3d Cir. 2007) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). As cited above, the jury was specifically instructed that the fact that a photograph may have been from a governmental agency was not evidence that petitioner had ever been arrested or convicted of any crime and that it was not to prejudice the defendant in any way. (*See* Dkt. No. 12-18 at p. 71-72.) The fact that the limiting instruction did not specifically mention the "Department of Corrections" as the applicable governmental agency is immaterial. A mention of the "Department of Corrections" in the trial judge's instruction could have reinforced the harm that the judge sought to cure, while the judge's reference to a governmental photo made the necessary point in less graphic fashion. The jury is presumed to have followed the instructions given by

the trial judge, *see Weeks*, 528 U.S. at 234, that the photograph was not evidence that petitioner

had been arrested or convicted and that it should not prejudice petitioner in any way.

Accordingly, for these reasons, Claim II will be denied.

C. <u>Claim III – Expert Testimony</u>

In Claim III, petitioner argues that his due process rights were violated when the trial

court did not grant a mistrial after Lieutenant Frame improperly testified that she believed

petitioner was above a street level drug dealer. The Appellate Division analyzed this Claim as

follows:

> Lieutenant Lynn Frame of the Cape May County Prosecutor's
> Office was permitted to testify that, during the investigation, a
> decision was made to record conversations between defendant and
> Curtin because "we suspected that the suspect or the target was a
> little bit more advanced and more substantial than the street level
> dealer." After an objection that she was "giving a conclusion of
> the status of a defendant" was overruled, she was permitted to
> testify as follows:
>
> > Q:  Upon what did you base *your decision that the
> > conduct of Mr. Hawk* or the subject *was more than
> > just a street level operation*?
> > A:  It was a number of factors. Beginning with the
> > number of transactions that occurred, the fact that
> > the amount of narcotics that was transacted was
> > larger than a regular street level deal, up to, I
> > believe it was up to almost a quarter ounce if not
> > more at that time. That indicates that the target is
> > able to provide larger quantities and is more than
> > just a street level dealer. And also the fact that he
> > was orchestrating transactions through other people.
> > [(Emphasis added).]
>
> At this point, defense counsel posed the following objection:
>
> > This witness who has not been qualified just gave
> > an opinion, that's first. Second, she made a
> > conclusion without being an expert to the jury. So
> > I'd ask that her testimony be stricken and ask for a

> mistrial. She just gave a conclusion as to the crime attributed to Mr. Hawk in this matter.
>
> The phrasing of the question by the prosecutor improperly asked the witness the reasons for her "decision" that defendant "was more than just a street level operation." *See State v. Summers*, 176 N.J. 306, 314 (2003) (Expert opinion is not objectionable "as long as the expert *does not express his opinion of defendant's guilt* but simply characterizes defendant's conduct based on the facts and evidence in light of his specialized knowledge[.]") (emphasis added) (quoting *State v. Odom*, 116 N.J. 65, 79 (1989)). However, even if improper expert testimony is elicited, a reversal of defendant's conviction is warranted only if that testimony was sufficiently prejudicial to have the capacity to bring about an unjust result. *State v. Nesbitt*, 185 N.J. 504, 518-19 (2006); *State v. Thompson*, 405 N.J. Super. 76, 81 (App. Div., *certif. denied*, 199 N.J. 133 (2009)).
>
> The verdict here presents unassailable proof that the jury was unswayed by this testimony because they only convicted defendant of the "street level" charges of conspiracy and distribution and acquitted him of the kingpin charge. Therefore, we conclude that this testimony was not "clearly capable of producing an unjust result." R. 2:10-2. [FN 5]
>
> [FN 5] In light of our conclusion that any error here was harmless, we need not address the State's failure to qualify Frame as an expert.

(Dkt. No. 12-7 at p. 14-16.)

Evidentiary rulings at trial are not subject to habeas review unless the ruling "caused 'fundamental unfairness' in violation of due process." *Kontakis*, 19 F.3d at 120. Furthermore, an evidentiary ruling does not give rise to federal habeas relief unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Id.*

In this case, any error by the trial court in failing to strike this testimony as impermissible expert testimony was harmless. Frame's purported expert testimony related to the charge that petitioner was a drug kingpin. However, petitioner was acquitted of this charge. Accordingly, the admission of this purported impermissible expert testimony did not have a substantial and

injurious effect on the jury's verdict due to his acquittal on the kingpin charge.  Moreover, the jury itself had the evidence of defendant's drug dealings that pointed to his being a drug distributor who can quickly fill drug orders through his direction to others, and this evidence was before the jury independently of Lt. Frame's testimony.  Therefore, Claim III will be denied.

D.  Claim IV – Wiretap Recordings

In Claim IV, petitioner argues that his due process rights were violated when the trial court failed to suppress the wiretap recordings of the telephonic conversations between Curtin and petitioner because Curtin was not a law enforcement officer at the time and the state failed to obtain the approval of the Attorney General to record the conversations.  Petitioner asserts in his petition that the State argued during the suppression hearing that Curtin was an undercover detective, which placed her within the exception for the State not seeking Attorney General wiretap approval under N.J. STAT. ANN. § 2A:156A-4.b.[2]  Petitioner argues in his federal habeas petition that Curtin was only a grant employee which did not place her within the definition of an "investigative or law enforcement officer" set forth in N.J. STAT. ANN. 2A:156A-2.f.[3]

Petitioner raised this Claim on direct appeal.  The Appellate Division denied this Claim without discussion after determining that it lacked sufficient merit to warrant discussion.

Claim IV essentially asserts a Fourth Amendment claim.  In *Stone v. Powell*, 428 U.S. 465, 494-95 (1976), the Supreme Court held that:

---

[2] This statutory provision provides that, "It shall not be unlawful under this act for [a]ny investigative or law enforcement officer to intercept a wire, electronic or oral communication, where such officer is a party to the communication or where another officer who is a party to the communication requests or requires him to make such interception[.]"  N.J. STAT. ANN. 2A:156A-4.b

[3] This statutory provision states that an "'Investigative or law enforcement officer' means any officer of the State of New Jersey or of a political subdivision thereof who is empowered by law to conduct investigations of, or to make arrests for, any offense enumerated in section 8 of P.L.1968, c. 409 (C.2A:156A-8) and any attorney authorized by law to prosecute or participate in the prosecution of any such offense[.]"  N.J. STAT. ANN. 2A:156.A-2.f.

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal and the substantial societal costs of application of the rule persist with special force.

"[T]here may be instances in which a full and fair opportunity to litigate was denied to a habeas petitioner," such as where a structural defect in the system prevented the claim from being heard. *Marshall v. Hendricks*, 207 F.3d 36, 82 (3d Cir. 2002). However, "[a]n erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar." *Id.* (citation omitted).

Petitioner was given a full and fair opportunity to argue that the trial court should have suppressed the recordings. The Appellate Division denied this Claim and determined that it lacked sufficient merit to warrant discussion. To the extent that petitioner argues that the state courts improperly decided his Fourth Amendment argument, this is not sufficient to overcome the *Stone* bar. *Accord Marshall*, 307 F.3d at 82.

Additionally, to the extent that petitioner can also be said to argue that the wiretap was unauthorized under state law, any such argument also does not merit granting federal habeas relief as "it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions." *Estelle*, 502 U.S. at 67-68; *see also Keller v. Larkins*, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court, however, cannot decide whether the evidence in question was properly allowed under the state law of evidence."). Accordingly, for the foregoing reasons, Claim IV will be denied.

E. Claim V – Prosecutorial Misconduct

In Claim V, petitioner argues that the prosecutor committed misconduct during the course of his summation. First, petitioner argues that the prosecutor's remarks were unsupported by the evidence when he stated that petitioner probably had a lot of customers. Second, petitioner contends that the prosecutor's statement that Curtin was trying to purchase as much cocaine as she could within the financial limits of law enforcement was improper as it was based on pure speculation. The last reasoned decision on this Claim was from the Appellate Division which analyzed this Claim as follows:

> Defendant argues that his motion for a mistrial should have been granted based upon improper comments made by the prosecutor in summation. The remarks specifically complained of are: that defendant "[p]robably had a lot of customers[,] but we only heard about one customer. And the one customer was an undercover police officer[,]" and that the undercover officer was attempting "to purchase as much as she could within the financial limits of the task force[.]" The prejudice alleged is that the first comment suggested that defendant had engaged in other drug transactions with other customers and that the second comment suggested that defendant had the capacity to provide significantly higher quantities of cocaine that those purchased by Curtin.

> Arguably, these comments were responsive to defense counsel's assertion in summation that defendant was merely "a low level street dealer." Still, prosecutors must be cautious not to exceed the wide latitude accorded the prosecutor in summation, *see State v. Wakefield*, 190 N.J. 397, 457 (2007), *cert. denied*, 522 U.S. 1146, 128 S. Ct. 1074, 169 L. Ed. 2d 817 (2008); *State v. Mayberry*, 52 N.J. 413, 437 (1968), *cert. denied*, 393 U.S. 1043, 89 S. Ct. 673, 21 L. Ed. 2d 593 (1969), by suggesting that defendant is guilty of criminal conduct beyond that being tried before this jury. *See State v. Farrell*, 61 N.J. 99, 103 (1972). However, "[n]ot every instance of misconduct in a prosecutor's summation will require a reversal of a conviction. There must be a palpable impact." *State v. Roach*, 146 N.J. 208, 219, *cert. denied*, 519 U.S. 1021, 117 S. Ct. 540, 136 L. Ed. 2d 424 (1996). Reversal is appropriate when the prosecutor's conduct is "so egregious that it deprived the defendant of the right to a fair trial." *State v. Josephs*, 174 N.J. 44, 124 (2002). *See also Roach*, *supra*, 146 N.J. at 219.

> In this case, to the extent that the prosecutor's comments can be
> construed as suggesting that defendant's criminal activity was of a
> kingpin nature, they were for naught since defendant was acquitted
> on that charge. As for the individual counts of distribution and
> conspiracy for which he was convicted, the evidence of his guilt
> provided by the testimony of the undercover officer who
> participated in each of the transactions was compelling. Therefore,
> the comments by the prosecutor did not deprive defendant of a fair
> trial.

(Dkt. No. 12-7 at p. 16-17.)

A criminal defendant's due process rights are violated if prosecutorial misconduct renders a trial fundamentally unfair. *See Darden v. Wainwright*, 477 U.S. 168, 182-83 (1986). A prosecutorial misconduct claim is examined in "light of the record as a whole" in order to determine whether the conduct "had a substantial and injurious effect or influence" on the jury's verdict. *See Brecht*, 507 U.S. at 638. A "reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001).

Petitioner fails to show that he is entitled to federal habeas relief on this Claim. The purported misconduct must be assessed in the context of the entire trial. As the state court noted, petitioner was actually acquitted of the drug kingpin charge to which the prosecutor's purported misstatements most likely were related. Additionally, as the state court also noted, the evidence against petitioner was overwhelming in light of the undercover officer's testimony which included petitioner's involvement in the multiple drug sales. These circumstances lead to a finding that this Claim lacks merit. *Accord United States v. Vitillo*, 490 F.3d 314, 330 n.9 (3d Cir. 2007) (finding that prosecutor's remarks during cross-examination and summation were harmless in light of defendant's overwhelming evidence of guilt). Furthermore, the jury was

specifically instructed that the summations of counsel are not evidence.  Indeed, the jury was instructed that:

> Regardless of what counsel said or I may have said recalling the evidence in this case it is your recollection of the evidence that should guide you as judges of the facts.  Arguments, statements, remarks, openings, summations of counsel are not evidence and must not be treated as evidence.  Although the attorneys may point out what they think important in this case you must rely solely upon your understanding and recollection of the evidence that was admitted during the trial.

(Dkt. No. 12-18 at p. 10-11.)  The jury is presumed to have followed this instruction.  *See Weeks* 528 U.S. at 234.

Accordingly, for these reasons, the state court denial of relief on this Claim was not an unreasonable application of clearly established federal law.  Claim V will be denied.

## F.  Claim VI – Written Jury Instructions

In Claim VI, petitioner contends that his due process rights were violated when the trial court denied the jury's request to receive written jury instructions.  While the jury was deliberating, it sent the trial judge a note requesting the following, "[w]e would like to be able to read the statute description of what distribution is, especially pertaining to the attempt to distribute or assisting in the distribution."  (Dkt. No. 12-18 at p. 92.)  Petitioner contends that:

> This question concerned the last three alleged [controlled dangerous substance] sales, when petitioner was in North Carolina and the sales were between co-defendant Angel and grant employee Curtin.  Without the added weight of cocaine in these transactions, petitioner could not have been convicted of a second degree offense.

(Pet. at p. 22.)  The trial judge ultimately concluded that it would not be appropriate to provide the jury with copies of the statute in the jury room.  (*See* Dkt. No. 12-8 at p. 99.)  However, the court recharged the jury on the applicable law orally.  (*See id.* at p. 100-107.)

Petitioner raised this issue on direct appeal. The Appellate Division denied relief on this Claim without opinion concluding that it lacked merit.

A claim related to jury instructions must infect the entire trial in order to establish a due process violation. *See Estelle*, 502 U.S. at 72; *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). An instruction must be considered in the context of the instructions as a whole and the trial record. *See Estelle*, 502 U.S. at 72.

In this case, petitioner's argument is not that the trial court erred in its actual instructions to the jury. Instead, he simply argues that the trial court should have provided the jury with written instructions. However, "the Constitution does not require that jurors receive written jury instructions." *French v. Roth*, No. 96-3848, 1998 WL 171276 at *3 (7th Cir. Feb. 26, 1998); *United States v. Pray*, 869 F. Supp. 2d 44, 50-51 (D.D.C. 2012) (holding that because there is no constitutional right to written copy of jury instructions, oral instructions that adequately convey defense theory "fulfill a defendant's due process rights"). Here, the trial judge quite properly re-instructed the jury in the area of law responsive to the jury's question. Moreover, the Supreme Court has never suggested that written jury instructions, though perhaps feasible in most courts, are constitutionally required as part of the due process of law. Accordingly, petitioner has failed to show that the denial of this Claim was an unreasonable application of clearly established federal law. *Cf. Williams v. Harrison*, 368 F. App'x 764, 765 (9th Cir. 2010) (denying habeas relief where petitioner claimed he was deprived his constitutional rights where trial court gave oral instructions on duress defense but failed to provide jury written instructions on duress defense despite emphasizing importance of written instructions because the court's failure to provide written instruction did not so infect the entire trial thereby violating petitioner's due process rights). Therefore, Claim VI will be denied.

## V.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Applying this standard, the Court finds that a certificate of appealability shall not issue in this case.

## VI.    CONCLUSION

For the foregoing reasons, the habeas petition will be denied.  A certificate of appealability shall not issue.  An appropriate order will be entered.


DATED:  **August 28, 2013**                              **s/  Jerome B. Simandle**
                                                                              JEROME B. SIMANDLE
                                                                              Chief United States District Judge